IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUSSELL WILLIAM T., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY, | : | No. 23-cv-2446 |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

**CRAIG M. STRAW**                                                         **November 27, 2024**
**United States Magistrate Judge**

Russell William T. (hereafter "Plaintiff") seeks review of the Commissioner's decision

denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI"). The parties consented to proceed before a Magistrate Judge[1] and the matter was

assigned to me.[2] For the following reasons, I deny Plaintiff's request for review and affirm the

Commissioner's decision.

## I.    <u>PROCEDURAL HISTORY</u>

On April 23, 2020, Plaintiff filed an application for DIB and SSI benefits under the

Social Security Act ("SSA"), alleging a disability onset date of March 28, 2016 ("AOD"). R.

347-63, 367-86, 397-403. The claim was denied initially on December 31, 2020, and again on

reconsideration. R. 106-47, 150-203. Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ"). R. 252-60. On October 14, 2021, a hearing took place over the phone due

to the Covid-19 Pandemic restrictions. R. 65-68. Plaintiff appeared with his non-attorney

---

[1] <u>See</u> Doc. 6; 28 U.S.C. § 636(c) & Fed. R. Civ. P. 73.
[2] <u>See</u> Doc. 3.

representative, Annette Bandos.  R. 68.  Vocational Expert ("VE") Donna Nealon also testified at the hearing.  R. 68, 90-95.

The ALJ issued a decision denying benefits.  R. 28-58.  Plaintiff filed a request for review of the ALJ's decision, which was denied.  R. 1-4.  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security.  20 C.F.R. §§ 404.981, 416.1481. Plaintiff's counsel then filed this action in federal court.  Doc. 1.  Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  Doc. 8.  Defendant filed a Response to Plaintiff's Request for Review.  Doc. 9.  Plaintiff subsequently filed a Reply.  Doc. 10.

## II.    <u>LEGAL STANDARDS</u>

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1.    Whether the claimant is currently engaged in substantial gainful activity;

2.    If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3.    If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings," <u>see</u> 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4.    If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform their past work; and

5.    If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform based on the claimant's age, education, and work experience.

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to establish that the claimant can perform other jobs in the local and national economies based on their age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Zirnsak, 777 F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (additional citations omitted)).  It is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing Schaudeck, 181 F.3d at 431).

## III.    ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

The ALJ determined that Plaintiff acquired sufficient quarters of coverage to remain insured through March 31, 2022.  R. 34.  Plaintiff had not engaged in any substantial gainful employment since the AOD.  Id.  The ALJ found the following severe impairments: right hip

osteoarthritis, obesity, depression, anxiety, and posttraumatic stress disorder ("PTSD").[3]  Id.; 20 C.F.R. §§ 404.1520(c), 416.920(c).  The ALJ decided that Plaintiff's impairments, either singly or in combination, did not meet or medically equal any of the Listings.[4]  R. 34-35; 20 C.F.R. pt. 404, subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

Considering the entire record, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c),[5] except he can never climb ladders/ropes/scaffolds and occasionally perform postural activities.  R. 38, 90-92.  Plaintiff can never work at unprotected heights, and can occasionally be exposed to vibration, machinery, and extreme cold.  Id.  Plaintiff can perform simple, routine tasks, make simple work-related decisions, and occasionally have contact with the public, supervisors, and co-workers.  Id.  Plaintiff is restricted to low-stress work involving occasional changes in the work setting and no mandated teams.  Id.  The ALJ found Plaintiff could not perform his past relevant work as a sales route driver[6] and assembler.[7]  R. 56; see 20 C.F.R. §§ 404.1565, 416.965.  The ALJ additionally

---

[3] The ALJ also found the following non-severe impairments: mild cognitive impairment, late effects of a cerebrovascular accident, amphetamine-type substance use disorder, hypertension, and hernia repair.  R. 34.  The ALJ, however, found that the non-severe impairments did not impose significant work-related limitations or did not last for a continuous period of twelve months.  Id.

[4] The ALJ specifically discussed Listings 1.18 (Abnormality of a major joint(s) in any extremity), 12.04 (Depressive, bipolar, and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (Trauma and stressor-related disorders).  See R. 35.

[5] Medium work is defined as, "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[6] Sales route driver is a semi-skilled, medium exertion level position.  See Dictionary of Occupational Titles (DOT) (4th ed. rev. 1991), 620.261-018; R. 56, 90.

[7] Assembler is an unskilled, medium exertion level position.  See DOT, 706.687-010; R. 56, 90.

found that there were other jobs in the national market that Plaintiff could perform including laundry laborer[8] and hand packer.[9]  R. 57.  Therefore, the ALJ found that Plaintiff was not disabled.  R. 58.

In his request for review, Plaintiff argues the ALJ failed to either adopt or reject and explain her reasoning for rejecting the limitations offered by Dr. Anne Vigderman, Martha DiPrinzo, M.A., and Dr. Sheri Balsam.  Doc. 8, at 2-6.  Plaintiff also asserts that remand is required because the ALJ failed to determine if Plaintiff's cane use for ambulation was medically necessary.  Id. at 6-8.  Lastly, Plaintiff contends the ALJ failed to consider Plaintiff's left wrist impairment.  Id. at 9-10.  The Commissioner counters that the ALJ provided sufficient review of the record and explained her findings.  Doc. 9, at 7-18.  The Commissioner also argues that the ALJ's evaluation of the medical opinions is supported by substantial evidence.  Id.  Next, the Commissioner contends that substantial evidence supports the ALJ's decision to exclude the use of a cane in Plaintiff's RFC.  Id. at 19-24.  Lastly, the Commissioner asserts the ALJ considered Plaintiff's left wrist impairment and provided sufficient reason to decline the proposed limitations, although she was not required to because the impairment was not medically determinable.  Id. at 24-30.

## IV.   FACTUAL BACKGROUND

Plaintiff was a "person closely approaching advanced age" at his AOD.[10]  R. 56, 67, 347-63, 367-86, 397-403; 20 C.F.R. §§ 404.1563(d), 416.963(d).  Plaintiff has his GED.  R. 57, 73.

---

[8] See DOT, 361.687-018.
[9] See DOT, 920.587-018.
[10] At the time he filed his application for disability benefits, Plaintiff was fifty-five years old making him a person of advanced age.  R. 56, 67, 347-63, 367-86, 397-403; 20 C.F.R. §§ 404.1563(e), 416.963(e)

From March 2017 to November 2019, Plaintiff was incarcerated at the State Correctional

Institution-Dallas.  R. 75.  During his incarceration, he reported no instances of

suicidal/homicidal ideations, he reported generally doing well, he worked as a janitor, he

socialized in the yard and dayroom, he walked the yard, he signed up for "old-timers' fitness," he

obtained his GED, he read books frequently, and attended NA meetings.  R. 57, 73, 584, 617-

915.  After his release, Plaintiff began counseling services with Family Services of Buck County,

and shortly after applied for DIB and SSI benefits.  R. 347-63, 367-86, 397-40, 1359.

### A.  Medical evidence[11]

#### 1.  Dr. Anne Vigderman

Plaintiff was referred to Dr. Vigderman for an internal medicine examination which

occurred on October 7, 2020.  R. 1336.  After an in-person examination, Dr. Vigderman

completed a Medical Source Statement of Ability to do Work-Related Activities ("MSS")

(Physical) detailing Plaintiff's physical limitations.  R. 1341.  Dr. Vigderman found that Plaintiff

could continuously lift up to 20 pounds, frequently lift 21 to 50 pounds, and occasionally lift 51

to 100 pounds.  Id.  Plaintiff could sit up to 4 hours, stand up to 2 hours, and walk for an hour

without interruption.  R. 1342.  In an 8-hour workday, Plaintiff could sit up to 8 hours, stand up

to 4 hours, and walk up to 3 hours.  Id.  She opined that Plaintiff could continuously reach,

handle, finger, feel, and push/pull with both hands.  R. 1343.  Dr. Vigderman, however, limited

Plaintiff to frequent reaching overhead.  Id.  Plaintiff could continuously operate foot controls

bilaterally.  Id.  She also opined that Plaintiff could frequently climb stairs/ramps, balance, stoop,

kneel, crouch, and crawl, but could only occasionally climb ladders/scaffolds.  R. 1344.  Dr.

---

[11] Here, I outline only the relevant medical opinions related to the issues on appeal.

Vigderman cited to a decrease in Plaintiff's right hip range of motion and strength to support her postural limitations.  Id.  Dr. Vigderman noted Plaintiff's right hip forward flection was 45 out of 100 degrees, interior rotation was 40 out of 40 degrees, and external rotation was 50 out of 50 degrees.  R. 1348.

Regarding environmental limitations, Dr. Vigderman found Plaintiff could continuously be exposed to unprotected heights, moving mechanical parts, and operate a motor vehicle.  R. 1345.  Plaintiff could frequently be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations.  Id.  Plaintiff could also tolerate up to loud (heavy traffic) noise.  Id.  Lastly, Dr. Vigderman opined that Plaintiff could do all activities listed including shopping, unassisted travel, ambulate without assistive devices, walk a block, prepare meals, personal hygiene, and handle paper files.  R. 1346.

### 2.  Martha DiPrinzo, M.A.

Plaintiff was referred to Ms. DiPrinzo for a mental status evaluation which occurred on September 21, 2020.  R. 1324.  After an in-person examination, Ms. DiPrinzo completed a MSS (Mental) detailing Plaintiff's limitations.  R. 1329.  Ms. DiPrinzo found Plaintiff had mild impairment in his ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions.  Id.  Plaintiff was moderately impaired in his ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions.  Id.  Ms. DiPrinzo found that Plaintiff had additional mild impairments interacting appropriately with the public and co-workers.  R. 1330.  Plaintiff was moderately impaired in his ability to interact appropriately with supervisors and respond appropriately to usual work situations and to changes in a routine work setting.  Id.  Ms. DiPrinzo cited to

Plaintiff's depression with anxiety and paranoid features as support for her findings. R. 1329-30. Plaintiff was impaired in his ability to concentrate, persist, maintain pace, and ability to adapt or manage himself. R. 1330. Ms. DiPrinzo noted in her evaluation that Plaintiff's attention, concentration, recent and remote memory skills were "impaired due to anxiety likely with the test situation." R. 1327.

### 3. Dr. Sheri Balsam

Plaintiff was referred to Dr. Balsam for a mental status evaluation which occurred on April 22, 2021. R. 1451. After an in-person examination of Plaintiff, Dr. Balsam completed a MSS (Mental) detailing Plaintiff's limitations. R. 1455. Dr. Balsam found moderate impairment in Plaintiff's ability to understand, remember, and carry out simple instructions, and make judgments on simple work-related decisions. Id. Plaintiff had marked impairment in his ability to understand, remember, and carry out complex instruction, and make judgments on complex work-related decisions. Id. Dr. Balsam also found moderate impairment in Plaintiff's ability to interact appropriately with supervisors and co-workers. R. 1456. Plaintiff was markedly impaired in his ability to interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting. Id. Dr. Balsam cites to Plaintiff's PTSD symptoms, depression, impaired memory, judgment, and ability to follow directions, and impairment in his relations with others to support her findings. R. 1455-56.

### C. Non-Medical Evidence

At his hearing, Plaintiff claimed that he suffered from major depressive disorder, chronic post-traumatic stress disorder, mixed anxiety, panic attacks, paranoia, arthritis in his hip, chronic bursitis of the hip, high blood pressure, history of stroke, and history of shattered wrist. R. 70-

71.  After his release from prison in 2019, he began working for a temporary placement service. R. 73-74.  He stated he stopped working on March 10, 2020, however, he worked part-time at American Conveyor for one and a half months in March 2021.  R. 73.  He left American Conveyor because he could not do the job due to requiring frequent breaks and calling out.  Id. He testified that while at American Conveyor the heaviest he could lift was about 35 pounds.  R. 74.

He reported that he fell in 2012 which worsened his hip pain to the point of seeking medical treatment.[12]  R. 76.  Plaintiff currently takes Celebrex to treat his hip pain which "does help a bit."  R. 76-77.  Despite the Celebrex, Plaintiff reported having difficulty getting up and down and going up and down the steps.  R. 77.  Plaintiff claimed that he is in constant pain whether he is sitting or standing.  Id.  He reported he could probably carry/lift 10 pounds, could sit for 2 hours before he has to get up, stand for 2 hours before moving, walk about 6 city blocks, and reported using a cane to help him out of the sitting position and when walking up steps.  R. 77-78.  He claimed he uses the cane for support when walking as well.  R. 78.  Plaintiff's cane was not prescribed.  Rather, he started using the cane by choice in January 2012 after he fell outside of his trailer.[13]  R. 79.

Plaintiff described an accident in 1997 that shattered his left wrist.  R. 79.  He reported that his left hand is impaired, and he cannot do much with his left hand.  Id.  When asked how he returned to full-time work after the accident, he responded that he is right hand dominant, and he did not have to use his left hand much when working.  R. 79.  He reported that his left wrist has

---

[12] Although the hearing transcript notes Plaintiff fell in 2012, the record reflects that Plaintiff told his evaluating physicians that he fell in January 2021.  R. 40, 1551, 1619, 1657.
[13] See Supra n.12.

worsened over time, and he has a limited range of motion.  R. 79-80.  Plaintiff, however, has no

problem reaching.  R. 81.  Plaintiff did not receive much treatment for either his hip or left wrist,

but his hip and wrist have significantly worsened over the last four years.  R. 80.

      Plaintiff has received consistent mental health treatment since his November 2019 release

from prison.  R. 75.  He reported treating with a psychiatrist once a month from November 2019

to December 2020 when he was reduced to one visit every two months.  R. 75-76.  He currently

sees a counselor at Center for Family Service once a week.  Id.  Plaintiff stated he has PTSD

from multiple traumatic events in his life including his arrest when he attempted to commit

suicide, being shot by a rubber bullet, and the loss of his son in a car accident.  R. 87-88.  He

cannot concentrate very long, it takes him a long time to complete simple tasks, and he has issues

completing task.  R. 88.  He has panic attacks that make him not want to leave the house and

interrupt his daily routine.  Id.  His paranoia is constant, he fears the police, and believes people

are constantly talking about him.  R. 88-89.

      When asked about his day, Plaintiff reported he does not do much, he reads a little, does

laundry once a week, cooks his meals, and talks to his counselor on the phone.  R. 82.  Plaintiff

lives alone in a trailer with his dog.  R. 72.  He cleans once a month, and his stepson does the

yard work.  R. 82.  Plaintiff has a license but only drives 4 to 5 times a month to shop and attend

appointments.  R. 72-73.  He does not go out with friends but does attend birthdays and dinners

with his stepsons.  R. 82.  Plaintiff reported no recent mental health hospitalizations.  R. 83.

## V.    DISCUSSION

**A.  The ALJ adequately explained why she adopted some and rejected other limitations proposed in Dr. Vigderman, Ms. DiPrinzo, and Dr. Balsam's medical opinions.**

Plaintiff's first claim is that the ALJ failed to either adopt or reject and explain her reasons for rejecting the limitations proposed by the medical sources. Doc. 8, at 2. Specifically, Plaintiff claims that the ALJ found Dr. Vigderman, Ms. DiPrinzo, and Dr. Balsam's opinions persuasive but failed to include all the proposed limitations in Plaintiff's RFC or explain what limitations she was rejecting and why. Doc. 8, at 2-6. The Commissioner argues that the ALJ provided adequate explanation for each persuasiveness conclusion. Doc. 9, at 7-19. I find that Plaintiff's argument lacks merit.

An RFC assessment is the most a claimant can do in a work setting despite the limitations caused by his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all the relevant and other evidence in the case record. Id. §§ 404.1545(a)(3), 416.945(a)(3). It is the ALJ's exclusive responsibility to determine the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). An ALJ must include in the RFC any credibly established limitations the record supports. Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007).

The ALJ's RFC assessment must be "'accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). The ALJ must evaluate the persuasiveness of each medical opinion based on five factors set forth in 20 C.F.R. §§ 404.1520c(c), 416.920c(c). See Thomas v. Kijakazi, No. 21-cv-3547, 2022 WL 17880922, at *6 (E.D. P.a. Dec. 22, 2022); see also Lawrence v. Comm'r of Soc. Sec., No. 21-cv-01239, 2022 WL 17093943, at *4 (M.D. Pa. Nov. 21, 2022) ("Rather than assigning weight to medical opinions, [an ALJ] will articulate how persuasive he or she finds the medical opinions.")

(alteration in original) (citations and internal quotations omitted).  The factors include: (1)

supportability; (2) consistency; (3) relationship with the claimant, including the length of the

treating relationship and the frequency of exams; (4) the medical source's specialization; and (5)

other factors including but not limited to the source's familiarity with the other evidence in a

claim or an understanding of the disability program's policy and evidentiary requirements.  20

C.F.R. §§ 404.1520c(c), 416.920c(c).  Even though the ALJ is not bound to accept any

physicians' conclusions, the ALJ "'may not reject them unless [she] first weighs them against

other relevant evidence and explains why certain evidence has been accepted and why other

evidence has been rejected.'"  Balthasar v. Kijakazi, No. 20-cv-06181, 2022 WL 2828848, at *6

(E.D. Pa. July 20, 2022) (quoting Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003)

(additional quotations and citations omitted)); see also Densberger v. Saul, No. 20-cv-772, 2021

WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) ("[P]rovided that the decision is accompanied by

an adequate, articulated reason, it is the province and duty of ALJ to choose which medical

opinions and evidence deserve greater weight.").

        Nevertheless, the ALJ is not required to discuss or refer to every piece of the relevant

evidence in the record when assessing an RFC.  Fargnoli, 247 F.3d at 42.  Once an ALJ has

made an RFC determination it will not be set aside provided substantial evidence supports the

RFC.  Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

        When determining Plaintiff's RFC, the ALJ considered Dr. Vigderman, Ms. DiPrinzo,

and Dr. Balsam's opinions.  R. 52-54.  Ultimately, the ALJ determined that Plaintiff had the RFC

to perform medium work with some restrictions—he could never climb ladders/ropes/scaffolds,

never work at unprotected heights, and can occasionally be exposed to vibration, machinery, and

extreme cold.  R. 38.  Plaintiff was limited to simple routine task, simple work-related decisions,

and restricted to low-stress work involving occasional changes in the work setting and no

mandated teams.  R. 38, 90-91.  Plaintiff was also restricted to occasional contact with the

public, supervisors, and co-workers.  R. 38.

      Regarding Dr. Vigderman's opinion, the ALJ reasoned:

> Consultative examiner Dr. Vigderman prepared an opinion on
> October 7, 2020, in which she found that the claimant could . . .
> climb ladders or scaffolds occasionally and could perform the rest
> of the postural activities frequently. She found that the claimant
> could tolerate frequent exposure to humidity and wetness, extreme
> cold and heat, vibrations, and dust, odors, fumes, and pulmonary
> irritants. . . . This opinion is generally well supported by Dr.
> Vigderman's consultative examination of the claimant. On physical
> examination by Dr. Vigderman . . . . Otherwise, this physical
> examination was generally within normal limits. This opinion is
> partially consistent with the other evidence of record discussed
> above, which supports a finding that due to his osteoarthritis of right
> hip and obesity the claimant is limited to medium work as defined
> in 20 CFR 404.1567(c) and 416.967(c) except he can never climb
> ladders/ropes/scaffolds and can do the rest of the postural activities
> occasionally. He can never work at unprotected heights, and can be
> exposed occasionally to vibration, machinery, and extreme cold.
> Therefore, Dr. Vigderman's opinion is found to be partially
> persuasive.

R. 52 (internal citations omitted).

      Here, the ALJ explains that Dr. Vigderman's opinion is partially persuasive because

Plaintiff's osteoarthritis of the right hip and obesity call for greater limitations than those found

by Dr. Vigderman.  Id.  Dr. Vigderman found that Plaintiff could climb ladders and scaffolds

occasionally and could perform the rest of postural activities frequently.  R. 52, 1344.  She also

found that Plaintiff could be exposed to vibrations and extreme cold frequently.  Id.  The ALJ

notes that the record evidence discussed earlier in the opinion[14] and Plaintiff's osteoarthritis of

the right hip impairment and obesity call for greater limitations, specifically that Plaintiff could

never climb ladders and scaffolds, occasionally perform postural activities, and could only have

occasional exposure to vibrations and extreme cold.  R. 52.  Thus, the ALJ provided an

explanation for declining to adopt all of Dr. Vigderman's limitations and in fact adopted more

restrictive limitations which was well within her discretion.[15]  See Titterington v. Barnhart, 174

F. App'x 6, 11 (3d Cir. 2006) (allowing ALJ to adopt greater limitations than those found by

physician); see also Jones, 364 F.3d at 504-05 (finding explanation sufficient to permit

_____

[14] The record evidence discussed includes Dr. Vigderman's evaluation of Plaintiff's hip and lower extremities, hip examination results from other examining physicians, Plaintiff's daily living activities, and objective medical reports.  R. 40, 50.

[15] See Benson v. Kijakazi, No. 21-1345, 2022 WL 17406051, at n.1 (W.D. Pa. Dec. 2, 2022) (alteration in original quotations) (citing Wilkinson v. Comm. of Soc. Sec., 558 F. App'x. 253, 256 (3d Cir. 2014)) ("[E]ven if an ALJ finds an opinion to be persuasive or very persuasive, the ALJ is 'not required to adopt all of [the medical source's] opinion solely because [he/she] found the opinion as a whole persuasive.'"); see also Mathews v. Kijakazi, No. 21-1140, 2022 WL 4535087, at n.2 (W.D. Pa. Sept 28, 2022) ("There is no corollary requirement that an ALJ explicitly reject any part of a persuasive/very-persuasive opinion that does not make it into the RFC verbatim and provide an explanation for having purportedly rejected such evidence."). Plaintiff also argues that the ALJ failed to adopt or reject Dr. Vigderman's opinion that he could only have occasional exposure to loud noise which would eliminate his ability to work as a hand packer because the position requires constant exposure to loud noise.  Doc. 8, at 4.  The ALJ's determination that Plaintiff could perform medium work including that of hand packer indicates that the ALJ implicitly found that Plaintiff could perform the requirements associated with that job.  See Lauren R. v. Kijakazi, No. 20-cv-15611, 2023 WL 3884120, at *10 (D.N.J. Jun. 8, 2023) (stating when substantial evidence supports a claimant's RFC determination it is implicit in the ALJ's finding that the claimant can perform the requirements of exertion level assigned). Nonetheless, even if the ALJ adopted Dr. Vigderman's limitation restricting him to occasional exposure to loud noise, Plaintiff could still perform the job of laundry laborer which requires exposure to moderate noise.  See DOT 361.687-018; 1991 WL 672992 (4th ed. 1991).  Thus, Plaintiff could still perform a job available in the national economy that comports with his RFC, rendering him not disabled.  See 20 C.F.R. §§ 404.1520(g), 416.920(g) (stating that if a claimant can perform other work, the claimant is not disabled).  Plaintiff's argument regarding Dr. Vigderman's opinion regarding his ability to reach overhead fails for the same reasons.  Doc. 8, at 4.

meaningful review when the ALJ cited to record evidence, objective evidence, and addressed contradicting evidence when formulating the RFC).

Next, regarding Ms. DiPrinzo's opinion, the ALJ found:

> Consultative examiner Ms. DiPrinzo prepared an opinion on September 21, 2020, in which she found that the claimant had mild limitation in understanding, remembering, and carrying out simple instructions; the ability to make judgments on simple work-related decisions; interacting appropriately with the public; and interacting appropriately with co-workers. She opined that the claimant had moderate restriction for understanding, remembering, and carrying out complex instructions; the ability to make judgments on complex work-related decisions; interacting appropriately with supervisor(s); and responding appropriately to usual work situations and to changes in a routine work setting. This opinion is generally well supported by Ms. DiPrinzo's consultative examination of the claimant. On mental status examination by Ms. DiPrinzo, the claimant reported feeling anxious that day likely due to the evaluation setting. His attention and concentration were impaired due to anxiety likely with the test situation. His recent and remote memory skills were mildly impaired due to depression and anxiety, and likely anxiety in evaluation. His insight and judgment were fair. Otherwise, this mental status examination was generally within normal limits. This opinion is also generally consistent with the other evidence of record. The claimant frequently reported during his prison time that he was doing OK or well, and did not have questions or concerns for psychology. He worked as a janitor at SCI Dallas, and he attended classes and obtained a GED. He went to the gym and read a lot, several books a week. He walked in the yard, socialized in the dayroom, and attended NA meetings and different groups. Dr. Rebeck assessed on September 23, 2020, that the claimant's mood continued to improve with less PTSD problems the longer he was out of prison. Therefore, Ms. DiPrinzo's opinion is found to be generally persuasive.

R. 52 (internal citations omitted).

Here, the ALJ provided reasons why she adopted some but not all of the proposed limitations. Id. The ALJ explained that Ms. DiPrinzo noted that Plaintiff's examination anxiety affected her evaluation of Plaintiff's attention and concentration, and recent and remote memory

skills.  R. 52, 1327.  Ms. DiPrinzo specifically noted that both areas were "impaired due to anxiety likely with the test situation."  Id.  The ALJ explained that in the record evidence Plaintiff generally reported doing "ok," did not seek psychological treatment, worked as a janitor, obtained his GED, read books, socialized with other inmates and attended NA meetings.  R. 52, 617-824.  The ALJ found Plaintiff's anxiety on examination to be inconsistent with the record evidence.  R. 52.  Thus, the ALJ adopted most of Ms. DiPrinzo's limitations and provided reasoning why she rejected other limitations.  R. 38.  See Mathews v. Kijakazi, No. 21-1140, 2022 WL 4535087, at n.2 (W.D. Pa. Sept 28, 2022) ("There is no corollary requirement that an ALJ explicitly reject any part of a persuasive/very-persuasive opinion that does not make it into the RFC verbatim and provide an explanation for having purportedly rejected such evidence."); see also See Diaz v. Comm'r of Soc. Sec., 577 R.3d 500, 504 (3d Cir. 2009) (quoting Jones, 364 F.3d at 505 (holding the ALJ "need not employ particular 'magic' words" when setting forth the reasons for a decision)).

Finally, the ALJ provided the following reasons for finding Dr. Balsam's opinion partially persuasive:

> Consultative examiner Dr. Balsam prepared an opinion on April 22, 2021, in which she found that the claimant had moderate restriction for understanding, remembering, and carrying out simple instructions and the ability to make judgments on simple work-related decisions and interacting appropriately with supervisor(s) and co-workers. She opined that the claimant had marked restriction for understanding, remembering, and carrying out complex instructions; the ability to make judgments on complex work-related decisions; interacting appropriately with the public; and responding appropriately to usual work situations and to changes in a routine work setting. This opinion is partially supported by Dr. Balsam's explanation for her opinion. On mental status examination by Dr. Balsam, manner of relating was fair. . . . Otherwise, this mental status examination was within normal limits. This opinion is also

> partially consistent with the other evidence of record, which supports a finding that the claimant has at the most moderate mental limitations. The claimant frequently reported during his prison time that he was doing OK or well. He worked as a janitor at SCI Dallas, and he attended classes and obtained a GED. He went to the gym and read a lot, several books a week. He walked in the yard, socialized in the dayroom, and attended NA meetings and different groups. He always denied suicidal ideation / homicidal ideation / self-injurious behavior at SCI Dallas. Dr. Rebeck assessed on September 23, 2020, that the claimant's mood continued to improve with less PTSD problems the longer he was out of prison. Therefore, Dr. Balsam's opinion is found to be partially persuasive.

R. 53-54 (internal citations omitted).

Here, the ALJ finds Dr. Balsam's opinion partially persuasive because her proposed limitations were partially consistent with the record evidence. R. 53-54. The ALJ explained that, at most, the record evidence supported Dr. Balsam's proposed moderate limitations. Id. The record evidence, however, did not support more than moderate limitations. Id. The ALJ specifically cited to Plaintiff's self-reports, employment while incarcerated, earning a GED, reading consistently, socializing consistently, denial of any suicidal, homicidal, or self-harm ideation, and Plaintiff's mental improvement noted by other sources after his release to show the record did not support more than moderate limitations. R. 53-54, 617-824, 1390. Thus, the ALJ properly rejected Dr. Balsam's marked limitations and explained what evidence in the record supported her rejection. Id. She also cited to other medical opinions to address consistency of the opinions and provided a logical connection between the rejection of the limitations and her explanation. See Wilkinson v. Comm. of Soc. Sec., 558 F. App'x. 254, 256 (3d Cir. 2014) (holding ALJ adequately explained decision to reject certain limitations proposed by physician by citing record evidence that was inconsistent with proposed limitations and was not required to adopt all of physician's proposed limitation solely because she found opinion persuasive); see

also Mathews, 2022 WL 4535087, at n.2 (alteration in original quotation marks) (citing Jones, 364 F.3d 501, 505 (3d Cir. 2004)) ("An ALJ's decision must reflect a thorough consideration of the evidence and permit 'meaningful review.'"); Gamret v. Colvin, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citing Hodes v. Apfel, 61 F.Supp.2d 798, 806 (N.D. Ill. 1999)) (describing an ALJ's task as "build[ing] an accurate and logical bridge between the evidence and the result")

The ALJ provided sufficient reasoning when she adopted or rejected the limitations proposed by Dr. Vigderman, Ms. DiPrinzo, and Dr. Balsam.  R. 52-54; See 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The ALJ provided explanations for her findings at the end of every evaluation, discussed consistency and supportability by citing to record evidence which she considered at length in the beginning of the opinion, and compared other medical opinions and evidence.  R. 38-51, 52-54.  If the ALJ disagreed with a particular finding she noted the evidence in the record that contradicted or supported a greater or less restrictive limitation, and did, at times, find greater restrictions than those provided in the medical opinions.  Id.  See Balthasar, 2022 U.S. Dist. LEXIS 128441, at *16 (citing Cadillac, 84 F. App'x at 168) (An ALJ must explain why certain evidence has been accepted and why other evidence has been rejected); see also Brown v. Astrue, 649 F.3d 193, 196 (3d Cir. 2011) (citation omitted) ("[T]he ALJ is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences.").  The ALJ's explanations were sufficiently supported by substantial evidence.  Accordingly, Plaintiff's first claim fails.

**B.  The ALJ was not required to consider Plaintiff's use of a cane because it was not medically necessary.**

Plaintiff next argues the ALJ was required to determine if Plaintiff's cane use was medically necessary and failed to do so.  Doc. 8, at 6.  Plaintiff further argues that his cane use was medically necessary, and therefore his RFC is incorrect since cane use is, at best, consistent with sedentary work.  Id. at 8.  The Commissioner argues that the ALJ adequately addressed the cane use, found it unnecessary, and the RFC is supported by substantial evidence.  Doc. 9, at 19-24.  For the following reasons, Plaintiff's claim fails.

The use of an assistive device to ambulate can "dramatically and adversely affect a person's ability to perform work on a sustained basis" and sometimes be "outcome determinative" in a Social Security appeal.  Mundo v. Kijakazi, No. 21-cv-517, 2023 WL 2632810, at *4 (M.D. Pa. Mar. 24, 2023) (citing Figueroa v. Kijakazi, No. 22-cv-294, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023)).  The ALJ, however, is not required to account for the use of a hand-held assistive device in the RFC if the device is not medically necessary.  Mundo, 2023 WL 2632810, at *4.  The claimant must provide medical evidence to show that the assistive device is medically necessary.  SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996).  SSR 96-9P states:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be eroded.

Id.

A claimant's testimony alone, a prescription for an assistive device, a check mark on an MSS indicating an assistive device is medically necessary, or an incomplete showing is not sufficient to show that the assistive device is medically necessary.  Id. at *5; see Howze v. Barnhart, 53 F. App'x. 218, 222 (3d Cir. 2002); Williams v. Colvin, No. 13-cv-2158, 2014 WL 4918469, at *10-*11 (M.D. Pa. Sept. 30, 2014).  "Courts have held claimants to a high burden in supplying the appropriate documentation[,] including unambiguous opinions from physicians outlining the circumstances in which the assistive device is medically necessary."  Johnson v. Kaukazi, No. 22-914, 2023 WL 6387906, at *7 (D. Del. Sept. 29, 2023) (quotation marks omitted) (citing Rodkey v. Berryhill, No. 17-784, 2019 WL 1781541, at *6 (D. Del. Apr. 23, 2019).

Once a claimant makes a showing of medical necessity it is then "incumbent of the ALJ to directly 'address the evidence concerning Plaintiff's use of' assistive devices." Mundo, 2023 WL 2632810, at *4 (citing Figueroa, 2023 WL 2432909, at *10) (quoting Steward v. Comm'r of Soc. Sec., No 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. Jun. 23, 2009)).  Failure to do so may require remand.  Mundo, 2023 WL 2632810, at *4 (citing Figueroa, 2023 WL 2432909, at *10).  Specifically,

> [W]hen the evidence indicates that the use of [an assistive device] is medically required and a vocational expert testifies that the plaintiff's use of an assistive device would render her unable to work, it is error for the ALJ to fail to set forth the reasons for rejecting this expert testimony. . . .

Id. (citing Altomare v. Barnhart, 394 F. Supp. 2d 678, 682 (E.D. Pa. 2005); Graver v. Colvin, No. 13-cv-1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014).

Here, Plaintiff submitted medical opinions related to Plaintiff's cane use—one from Dr. Brendan McGuire and one from Dr. Debra Lynn Geiger. R. 1462-73, 1618-72. Dr. Geiger was Plaintiff's treating physician and submitted treatment records as well as a MSS (Physical). R. 1618-72. On Dr. Geiger's MSS (Physical) and throughout her treatment records, she noted Plaintiff's cane use, and checked off that Plaintiff needed a cane on his questionnaire but never stated that the cane was medically necessary, nor did she provide documentation explaining why the cane was needed, under what circumstances it was needed, or the suggested duration of use, etc. R. 1644, 1651, 1660. Noting that Plaintiff used a cane throughout treatment records and a sole check mark on the MSS regarding Plaintiff cane use is insufficient to overcome the threshold showing that the cane was medically necessary.[16] See Howze, 53 Fed.Appx. at 222 (holding that script for an assistive device, physician checking off box that device was medically necessary, and references throughout treatment record that mention claimant's cane use without out discussion of medical necessity is insufficient to show device was medically necessary).

Plaintiff also cites the medical opinion of Dr. McGuire in support of his necessary cane use. R. 1462-73. Dr. McGuire saw Plaintiff on May 5, 2021, and provided:

> GAIT STATION: . . . . His gait with the cane is for the most part normal. He does take very slow steps, but there is no gait dysfunction appreciated. Without the cane, he was unsteady. He did use the wall to help stead himself and, again, took very slow steps. Walking on heels was with much difficulty. He did use his cane, but he really could not keep his toes up at all. Walking on toes was very poor. He did use his cane, as well. He really could not walk on his toes, much difficulty. Squat is 50%, rising from the squat using the exam room wall as well as his cane. His stance with and without the

---

[16] Additionally, the Court notes that Dr. Geiger's records refer to Dr. Edward J. Ford's, an orthopedist that treated Plaintiff's hip pain, evaluations. R. 1651, 1656. Notably, Dr. Ford also mentions Plaintiff's cane use but does not opine on its medical necessity which is insufficient to satisfy SSR 96-9P. R. 22, 100; See Howze, 53 F. App'x. at 222.

cane is normal. His tolerance to bear weight and ambulate with the cane are slightly poor, as it took him forever to walk down the hallway. Without the cane is poor because of his slow steps as well as being unsteady. I think the cane is clinically necessary, although he said no one prescribed the cane [f]or him; he just got one when he fell earlier this year. The claimant did use a cane in the exam room. . . . He needed no help getting on and off exam table. He was able to rise from the chair without difficulty, but he did use his cane and the edge of the chair to hoist himself out.

R. 1465. Dr. McGuire also filled out an MSS (Physical) noting Plaintiff's cane use was medically necessary and that he could walk 1-2 blocks without the cane and carry small objects in his free hand. R. 1469. He stated that Plaintiff walks slow and is unsteady without the cane. R. 1469. Despite the medical opinions submitted, Plaintiff was never prescribed a cane. R. 79.

Much like <u>Howze</u>, where the doctor prescribed claimant a cane and there were notes throughout the record about cane use but no explanation, Dr. McGuire provides his observations of claimant on examination but does not address specifics of the cane use. R. 1465. In other words, Dr. McGuire does not address whether Plaintiff required the cane for walking or standing only or both, whether Plaintiff needed the cane all the time, periodically, or only in certain situations, and if terrain is an issue. 53 F. App'x at 222. Dr. McGuire notes that his conclusion about Plaintiff's cane use is solely based on observing the claimant and not on other medical documentation or past diagnosis that would require cane use or could be treated by cane use.[17] R. 1469; <u>see</u> <u>Howze</u>, 53 F. App'x at 222 (holding that a prescription for a cane, to treat left-leg

---

[17] Importantly, it appears that Dr. McGuire ignores other record evidence showing that Plaintiff did not always use a cane and his gait was normal. <u>See</u> R. 1656 (On September 1, 2021, Dr. Ford noting Plaintiff ambulated with stable gait, no mention of cane use). <u>See</u> <u>Brooks v. Saul</u>, No. 19-2855, 2019 WL 7048794, at *6-7 (E.D. Pa. Dec. 23, 2019) ("The medical evidence showing Plaintiff used a cane on occasion does not establish the cane was medically required under SSR 96-9p[.]").

weakness that caused claimant to lose balance and fall, without additional clear description of circumstances was insufficient to overcome SSR 96-9P threshold); see Johnson, 2023 WL 6387906, at *7 (holding physician's descriptions claimant's gait dysfunction and potential causes, records describing walker use, and physician's finding that walker was medically necessary, absent further specifics about frequency, duration, and circumstances surrounding walker use was not sufficient showing to satisfy SSR 96-9P).  For these reasons, Plaintiff has failed to provide medical documentation showing that his cane use was medically necessary under SSR 96-9P.  Thus, the ALJ was not required to consider or include Plaintiff's cane use in his RFC.  See Johnson, 2023 WL 6387906, at *8 (citing Rodkey, 2019 WL 1781541, at *6 (citing cases from Third Circuit, among others, and holding absent unambiguous opinion from physician outlining circumstances which an assistive device is medically necessary, ALJ did not err in failing to include use assistive device in RFC assessment)).

Even so, the ALJ addressed Plaintiff's cane use and found it was not medically necessary. The ALJ stated that:

> State agency medical consultant Joanna Marie Deleo, D.O. noted "[A] October 7, 2020 consultative examination that showed the claimant with normal gait / heel-toe walking / stance, full squat, no assistive device, ability to get on/off examination table and rise from a chair without difficulty, negative straight-leg raising, no joint deformity, deep tendon reflexes / sensory normal, strength 4/5 in the proximal right lower extremity and 5/5 in the distal right lower extremity / bilateral upper extremities / left lower extremity. . . decreased range of motion of the right hip."

R. 53.

The ALJ then directly addresses Dr. McGuire's opinion regarding Plaintiff's cane use by stating that:

> "This opinion is generally well supported by Mr. McGuire's
> consultative examination of the [claimant]. On physical examination
> by Mr. McGuire, gait with a cane was for the most part normal. He
> did take very slow steps, but there was no gait dysfunction
> appreciated. Without the cane, he was unsteady. He did use the wall
> to help steady himself, and he took very slow steps. . . . [T]his
> opinion is not consistent with the other evidence of record. No
> orthopedist records in support of deterioration in a few months since
> the previous consultative examination made the State agency doctor
> suspect embellishment. New evidence at Exhibits 21F and 22F
> include hip X-rays and other findings that do not support the
> deterioration."

R. 54-55.

The ALJ then cited to Dr. David Clark's finding that affirmed Dr. Deleo's findings and

explained:

> "there was no substantive change in the previous medical consultant
> opinion of December 31, 2020. . . . [T]he claimant had two internal
> medicine consultative examinations in October 2020 and May 2021,
> and examinations were very much different with normal straight leg
> raise, normal range of motion, and no assistive device use versus
> weakness, decreased range of motion over a variety of joints, and
> use of a cane. Dr. Clark stated that no medical evidence was
> provided to account for such a deterioration in physical condition
> between the two assessments, and embellishment was considered."

R. 55.

The ALJ explained that Plaintiff's cane was not medically necessary and why she did not

include the cane in Plaintiff's RFC. R. 53-55. The ALJ specifically addressed the supportability

of Dr. McGuire's findings by stating that Dr. McGuire relied on his observation, but those

observations were not supported by other evidence in the record. Id. The ALJ cited Plaintiff's

hip x-rays, and Dr. Deleo and Dr. Clark's findings that the medical record did not support the

24

deterioration Plaintiff claimed and that embellishment was suspected.[18]  R. 54-55.  Additionally,

the ALJ expressly addresses consistency by comparing the findings between the doctors and

noting the consistency between Dr. Deleo and Dr. Clark's findings.  Id.  Thus, the ALJ provided

adequate reasoning for rejecting Plaintiff's cane use and it is clear from the ALJ's discussion and

RFC that the ALJ did not find that Plaintiff's cane use was medically necessary.  See Diaz v.

Comm'r of Soc. Sec., 577 R.3d 500, 504 (3d Cir. 2009) (quoting Jones, 364 F.3d at 505 (holding

the ALJ "need not employ particular 'magic' words" when setting forth the reasons for a

decision)); see also Johnson, 2023 WL 6387906, at *8 (upholding the ALJ's decision where the

Court could reasonably infer from the ALJ's conclusion that the ALJ found claimant's use of an

assistive device was not medically necessary).

Plaintiff failed to provide unambiguous medical evidence detailing the circumstances for

which Plaintiff's cane was medically necessary as required by SSR 96-9P.  Even so, the ALJ

provided adequate reasoning for rejecting Plaintiff's cane use, and directly addressed the

supportability and consistency factors in her RFC reasoning.  Accordingly, the ALJ's decision is

supported by substantial evidence, and Plaintiff's second claim fails.

### C. The ALJ provided adequate reasoning for not including Plaintiff's alleged left wrist impairment in Plaintiff's RFC.

Plaintiff's final argument is that remand is required because the ALJ failed to consider

Plaintiff's left wrist impairment.  Doc. 8, at 9-10.  Plaintiff asserts that the ALJ did not address or

include Plaintiff's left wrist impairment in his RFC which would have been work-preclusive.  Id.

---

[18] The new x-ray evidence the ALJ referred to is an x-ray of Plaintiff's hip/pelvis taken on July 23, 2021.  R. 1674.  This x-ray occurred after Plaintiff's alleged fall in January 2021 which he claims resulted in him having to use a cane.  R. 76-79.  Importantly, the x-ray report specifically noted that there is no acute fracture or malalignment.  R. 1674.

The Commissioner argues that the ALJ need not consider Plaintiff's left wrist impairment because Plaintiff failed to show the impairment was medically determinable.  Doc. 9, at 25-30. The Commissioner also argues that the ALJ discussed and addressed the impairment although she did not have to.  Id.

An ALJ is required to consider all of a claimant's medically determinable impairments, including impairments that are not severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  At step two, the ALJ is required to determine if an impairment is medically determinable and if so, its severity.  Id. at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment is medically determinable if the impairment results, "from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  Id. at §§ 404.1521, 416.921.  Further, the physical impairment, "must be established by objective medical evidence from an acceptable medical source."  Id.  The ALJ will not use a statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment.  Id.  An ALJ may disregard an impairment in the RFC determination if the impairment is not a medically determined impairment and has no "demonstrable symptoms." Robert E. v. Comm'r of Soc. Sec., No. 20-cv-6882, 2021 WL 5277193, at *6 (D.N.J. Nov. 12, 2021); see Diciano v. Comm'r of Soc. Sec., No. 18-cv-17383, 2019 WL 6696523, at n.6 (D.N.J. 2019) (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(2); POMS, DI 25205.005) (explaining that "[i]t is true that an ALJ must assess a claimant's severe impairments in combination with non-severe impairments," but "an ALJ does not have to consider an alleged impairment if he does not find such an impairment is medically determinable").

Here, Plaintiff provided two medical opinions that discussed Plaintiff's alleged left-hand impairment—those of Dr. McGuire and Dr. Geiger.[19]  Dr. McGuire employed clinical testing techniques finding Plaintiff's left wrist flexion was 60/80 degrees, extension was 60/70 degrees, bilateral grip strength was 80 percent, and 4/5 bilaterally in the distal upper proximal extremities. R. 41, 1466, 1476-77.  Dr. McGuire opined that the mild decrease range of motion created an impairment.  R. 54-55, 1470.  Dr. McGuire ultimately opined that Plaintiff could use his free hand to carry small objects and could use either hand occasionally for reaching (overhead), handle, and push/pull.  Id.  Unlike the Commissioner's assertion, Plaintiff provided a clinical evaluation and an opinion from an acceptable source establishing that Plaintiff's left wrist impairment was medically determinable.

The ALJ, however, provided sufficient reasoning why she declined to adopt Dr. Geiger and Dr. McGuire's proposed left-wrist limitations.[20]  The ALJ first noted that Dr. McGuire's opinion was not consistent with the record.  R. 55.  The ALJ addressed the consistency of Dr. McGuire's nonexertional limitations (limitations involving hand use) by stating that Dr. Clark

---

[19] Dr. Geiger found that Plaintiff had left hand limitations, however, did not provide any clinical testing or records to support Plaintiff having a medically determinable left-wrist impairment. See 20 C.F.R. §§ 404.1521, 416.921 (medical opinion alone without objective clinical or laboratory technique testing will not suffice to establish that impairment is medically determinable).

[20] Any error omitting Plaintiff's left wrist impairment in the step-two analysis is harmless because the ALJ explained why she did not include the left wrist/hand limitations proposed by Dr. Geiger and Dr. McGuire in Plaintiff's RFC.  See Salles, 229 F. App'x at n.2 ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); see also Robert E., 2021 WL 5277193, at *4 (citing Torres v. Comm'r of Soc. Sec., No. 17-cv-843, 2017 WL 1251630, at *5 (D.N.J. 2017)) (stating when ALJ finds at least one severe impairment at step two, omission of another impairment, or determination that impairment is not severe, is harmless error so long as ALJ considers the impairment in Plaintiff's RFC and would not otherwise affect outcome of case).

did not adopt Dr. McGuire's nonexertional limitations because he suspected embellishment since there were no significant changes between Plaintiff's December 7, 2020, and May 5, 2021, evaluations.  Id.  The ALJ additionally cited to Dr. Vigderman's exam, which was generally within normal limits, and included the finding that Plaintiff's hand and finger dexterity was intact and grip strength was 5/5 bilaterally.  R. 40, 1339.  Dr. Deleo noted that Plaintiff had intact dexterity and grip strength of 5/5, and that Plaintiff could perform a full range of medium work. R. 53, 119.  The ALJ also relied on record evidence demonstrating Plaintiff was employed as a janitor while incarcerated and did not report any left wrist pain.  R. 42, 56, 761.  Finally, the ALJ also pointed out that Plaintiff could cook, clean, do laundry, shop at home, drive, and dress independently.  R. 50.  For these reasons, the ALJ properly declined to adopt Dr. McGuire's proposed left wrist limitations.

The ALJ also declined to adopt Dr. Geiger's left wrist limitations specifically because Dr. Geiger's opinion was not consistent with the record evidence or her own treatment records.  R. 56.  Dr. Geiger opined that Plaintiff could rarely use his left hand to grasp, turn, and twist objects, and could not use his left hand for fine manipulation or his left arm for reaching (including overhead).  R. 1644-45.  But Dr. Geiger's treatment records showed no clinical testing and actually support the opposite conclusions.  R. 1660, 1651.  Dr. Geiger noted normal movement of all extremities, no left wrist tenderness, warmth, or objective synovitis and a good range of motion of the left wrist and fingers.  Id.  Additionally, rare use of Plaintiff's left hand was inconsistent with the record evidence mentioned above.  As a result, the ALJ provided appropriate reasoning for not including the proposed left-wrist limitations in Plaintiff's RFC.

See <u>Salles</u>, 229 F. App'x at 147 (An ALJ need only include credibly established limitations supported by record in the RFC); <u>see also</u> <u>Densberger</u>, 2021 WL 1172982, at *8.

The ALJ provided sufficient reasoning for rejecting the proposed left wrist limitations. Plaintiff's third claim fails.

## VI.    <u>CONCLUSION</u>

The ALJ provided sufficient reasoning for adopting and rejecting the limitations proposed by Dr. Vigderman, Ms. DiPrinzo, and Dr. Balsam.  Additionally, the ALJ was not required to include Plaintiff's cane use in his RFC because the cane was not medically necessary. Alternatively, the ALJ provided sufficient reasoning for not including Plaintiff's cane use in the RFC determination.  Finally, the ALJ provided sufficient reasoning for not including Plaintiff's alleged left wrist impairment in his RFC.  For all these reasons, the ALJ's RFC determination is supported by substantial evidence.

Accordingly, Plaintiff's request for review (Doc. 1) is **DENIED**.  An appropriate order accompanies this opinion.

BY THE COURT:

<u>/s/ Craig M. Straw</u>
CRAIG M. STRAW
U.S. Magistrate Judge